## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DAWN G.,**[1]

      **Plaintiff,**

      **v.**

**MARTIN J. O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

**Case No. 1:22-cv-0818**
**Magistrate Judge Norah McCann King**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Dawn G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

### I.    PROCEDURAL HISTORY

On August 30, 2019, Plaintiff filed her application for benefits, alleging that she has been disabled since May 17, 2018. R. 100, 116, 210–13. The application was denied initially and upon reconsideration. R. 117–21, 138–40. Plaintiff sought a *de novo* hearing before an administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin J. O'Malley, the Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

law judge ("ALJ"). R. 141–42. ALJ John Campbell held a hearing on January 12, 2021, at which

Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35–80. In a

decision dated March 24, 2021, the ALJ concluded that Plaintiff was not disabled within the

meaning of the Social Security Act at from May 17, 2018, Plaintiff's alleged disability onset

date, through the date of that decision. R. 10–22. That decision became final when the Appeals

Council declined review on January 12, 2022. R. 1–6. Plaintiff timely filed this appeal pursuant

to 42 U.S.C. § 405(g). ECF No. 1. On June 21, 2022, Plaintiff consented to disposition of the

matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the

Federal Rules of Civil Procedure. ECF No. 10.[3] On that same day, the case was reassigned to the

undersigned. ECF No. 11. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g). The United States Supreme Court has explained this

standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));

*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is

> supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability

to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 39 years old on her alleged disability onset date. R. 21. She met the insured status requirements of the Social Security Act through December 31, 2023. R. 12. At step one,

the ALJ found that Plaintiff had not engaged in substantial gainful activity between May 17, 2018, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease; status-post right wrist fracture; migraine headaches; major depressive disorder; obsessive compulsive disorder; and post-traumatic stress disorder. *Id.* The ALJ also found that Plaintiff's restless leg syndrome was not severe. R. 13.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–15.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 15–21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a corrections officer. R. 21.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* approximately 18,860 jobs as a mail clerk, approximately 123,312 jobs as a routing clerk, and approximately 425,306 jobs as a cleaner, housekeeping—existed in the national economy and could be performed by Plaintiff. R. 21–22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 17, 2018, her alleged disability onset date, through the date of the decision. R. 22.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 15. The Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient

explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14.

## IV.    DISCUSSION

### A.    RFC and Psychiatric Review Technique

Plaintiff argues that substantial evidence does not support the ALJ's RFC for a limited range of light work because the RFC was inconsistent with the ALJ's own psychiatric review technique ("PRT") findings. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 15−17. Plaintiff also argues that the ALJ failed to consider Plaintiff's physical impairments in the RFC. *Id.* at 17–18. For the reasons that follow, Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC for a limited ranged of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally climb ramps, stairs, ropes, ladders and scaffolds; can only occasionally balance, stoop, kneel, crouch and crawl; can frequent[ly] finger, handle and reach with the bilateral upper extremities; cannot work at unprotected heights, around exposed moving mechanical parts or with dangerous heavy machinery or equipment such as that which cuts, tears, crushes, shears, or punctures in its operations; can work in environments of up to and including moderate noise intensity level; cannot work around flashing or strobe lights; and must avoid concentrated exposure to dusts, gasses, odors, fumes, or pulmonary irritants or poor ventilation. Additionally, the claimant is able to carry out simple but detailed instructions; perform simple, routine and repetitive tasks; make simple workplace decisions; occasional[ly] adjust to changes in workplace routines; and maintain frequent contact with supervision and occasional contact with coworkers and the public.

R. 15. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, as to her mental impairments, evidence that Plaintiff was suspended from work in March 2018 after she refused to return to an area where an inmate had died a few years previously; that she had sought mental health treatment, including  an acute partial hospitalization program, in May 2018 for worsening depression, anxiety, post-traumatic stress disorder and difficulty with daily functioning and that, by June, she had begun intensive outpatient treatment; that she was discharged to traditional outpatient treatment by August 2018 and she reported feeling euthymic with some expected anxiety and sadness, poor sleep due to nightmares, intrusive memories and flashbacks and avoidant behaviors but that she nevertheless reported feeling "so good" apart from her work; that she thereafter saw a psychiatrist and started medication management; that by January 2019, her husband had reported that she was sleeping better and seemed happier and, in February 2019, she started weekly counseling; and that the reviewing state agency consultants, whose opinions the ALJ found persuasive, opined that Plaintiff's mental impairments rendered

her only mildly limited in understanding, remembering, or applying information and moderately limited in interacting with others, concentrating, persisting or maintaining pace and adapting or managing herself. R. 16–18. With respect to Plaintiff's physical impairments, the ALJ noted, *inter alia*, Plaintiff's history of neck pain and that a November 2014 MRI revealed multilevel minimal disc bulges in the cervical spine, a small central disc herniation at C2-3, and tiny central disc herniations at C3-4 and C4-5 and a MRI of the lumbar spine was relatively unremarkable; that EMG/NCV testing showed only mild right C6 cervical radiculopathy; evidence that, although Plaintiff saw an orthopedist and an acupuncturist for these conditions, she has had limited treatment since her alleged disability onset date; that her acupuncturist indicated continued treatment, but provided no records of treatment; that Plaintiff reported ongoing right upper extremity pain in January 2017 and diagnostic testing revealed a non-united fracture of the right wrist, for which a splint was reportedly helpful; that Plaintiff returned to her orthopedist in October 2018, after almost a year's hiatus, complaining of right wrist discomfort and limited motion and that, although Plaintiff reported ongoing neck and back pain, there was little evidence of treatment; that at a March 2020 orthopedic consultative examination, Plaintiff reported back and neck pain, but she was able to get on/off the examining table; go from lying down to a sitting up position and dress herself; that, upon examination, Plaintiff had no sensory deficit in the upper extremities, had full pinch and grip strength bilaterally, although muscle strength in the right wrist was slightly  decreased in flexion and extension, could extend her fingers, make a fist and oppose the thumbs bilaterally, had normal range of motion of the cervical spine with no spasm or tenderness although there was decreased lumbar range of motion, she walked with a normal gait and did not require the use of an ambulation aid, and was able to heel and toe walk and squat without difficulty. R. 18–20.

The ALJ also went on to explain his RFC determination as follows:

> This residual functional capacity assessment takes into account all of the claimant's legitimate conditions and resulting limitations imposed on the claimant and gives the claimant the greatest benefit of the doubt. The claimant has a lot of complaints, but there is little objective evidence to support those complaints.

R. 21. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, argues that substantial evidence does not support the ALJ's RFC determination because the RFC was inconsistent with the ALJ's own PRT findings. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 15−17. Plaintiff specifically complains that, although the ALJ found a "moderate" limitation in Plaintiff's ability to concentrate, persist, or maintain pace, "there is no mention in the RFC with respect to time off task, absences, production pace or changes in the work setting, for example, despite evidence in record supporting, and the ALJ finding, such a restriction. (R. 15)." *Id.* at 16 (arguing further that "[t]his is absolutely crucial given the record of Plaintiff's psychiatric disability, her length of treatment, the VE's testimony regarding time off task and absences as well as the Plaintiff's testimony"). Plaintiff further contends that there is no "clear indication as to why or how" a mild limitation in understanding, remembering, or applying information results in an RFC limited to only "simple but detailed instructions," "simple routine and repetitive tasks," and "simple work place decisions." *Id.* at 17 (citing R. 14–15). According to Plaintiff, "[t]he RFC findings must be consistent with and account for the PRT findings made at Steps Two and Three." *Id.* (citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004)).

Plaintiff's arguments are not well taken. "[A]s long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has

'moderate' difficulties in 'concentration, persistence, or pace.'" *Hess v. Comm'r Soc. Sec*., 931 F.3d 198, 211 (3d Cir. 2019) (explaining that this conclusion "flows directly from our decision in *Ramirez*"). In the present case, the ALJ's decision offers a "valid explanation" for the finding that a limitation to simple, routine, and repetitive tasks adequately accommodates a moderate limitation in concentration, persistence, or pace. Specifically, when fashioning the RFC, the ALJ expressly relied on, *inter alia*, evidence that Plaintiff's mental health treatment "has been routine and conservative, consisting of outpatient mental health treatment, including therapy and medication management. This treatment has admittedly been helpful, as she quickly was stepped down from a partial hospitalization program and an intensive program and has been participating in outpatient treatment since the Fall of 2018"; by August 2018, she reported feeling good (other than her work); she helps her teenage kids with their homework when she can; and her husband reported that Plaintiff was sleeping better and seemed happier in January 2019. R. 16, 20. Based on this record, *Ramirez* does not require remand or otherwise undermine the ALJ's RFC determination in this regard. *See Hess*, 931 F.3d at 214 (finding that the ALJ's explanation was sufficient where the ALJ "highlighted, among other things, the following: mental status examinations and reports that revealed that Hess could function effectively; opinion evidence showing that Hess could do simple work; and Hess's activities of daily living, which demonstrated that he is capable of engaging in a diverse array of 'simple tasks'"); *cf. Menkes v. Astrue*, 262 F. App'x 410, 412–13 (3d Cir. 2008) ("The term 'simple routine tasks,' in the context of the disability proceedings, generally refers to the non-exertional or mental aspects of work. For example, performing a 'simple routine task' typically involves low stress level work that does not require maintaining sustained concentration.").

12

To the extent that Plaintiff suggests that the RFC is deficient because the ALJ's decision fails to explain how a mild limitation in understanding, remembering, or applying information factored in the RFC limitations to only "simple but detailed instructions," "simple routine and repetitive tasks," and "simple work place decisions," Plaintiff's conclusory argument is unavailing. *Plaintiff's Memorandum of Law*, ECF No. 12, p. 17.  As a preliminary matter, Plaintiff, who bears the burden at step four, does not explain how or why these RFC limitations fail to accommodate her mild limitation in this area of functioning. *See id.* Nor does Plaintiff point to any opinion that identifies any specific functional limitation beyond those identified in the RFC to accommodate Plaintiff's mildly reduced ability to understand, remember, or apply information. *See id*. As previously discussed, an ALJ need include only "credibly established" limitations, *i.e.*, limitations that are medically supported or otherwise uncontroverted in the record. *Rutherford*, 399 F.3d at 554; *see also Grella v. Colvin*, No. 3:12-cv-2115, 2014 WL 4437640, at *18 (M.D. Pa. Sept. 9, 2014) ("[T]he ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record."). Based on the record in this action, Plaintiff has not shown that remand is warranted on this basis. *Cf. D.C. v. Comm'r of Soc. Sec.*, No. CV 20-2484, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("[T]he Commissioner is correct that an RFC assessment does not need to contain in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild. . . . Thus, even if the ALJ's failure to analyze the mild mental limitations constituted an error, a dubious proposition, it still does not warrant reversal.").

In continuing to challenge the RFC determination, Plaintiff also argues that the ALJ failed to properly consider her migraine headaches. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 17–18. Plaintiff specifically complains that the ALJ found her migraine headaches to be

severe at step two and that it is not clear that the ALJ considered Plaintiff's "long history of treatment for headaches, through her neurologist Dr. Mabanta" or SSR 19-4p. *Id*. at 17. Plaintiff also complains that, although the ALJ explored with the vocational expert limitations related to headaches, the ALJ never incorporated those limitations into the RFC. *Id*. at 17–18 (citing R. 65–67).

Again, Plaintiff's arguments are not well taken. As a preliminary matter, the United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess*, 931 F.3d at 209. Because the RFC is the most that a claimant can do despite her limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id*. (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*.

Moreover, although the ALJ did not refer to Dr. Mabanta by name, the ALJ expressly considered Plaintiff's treatment history with this neurologist at step four:

> The claimant has a history of migraine headaches and was seeing a neurologist, who was providing Botox injections for the same before the alleged onset date, as they were effective (Exhibit 2F). In January 2018, she had a Botox injection (Id. at 20), which provided 85-90% improvement in her migraines (Id. at 1). In fact, she did not return to her neurologist until March 2019, at which time, she reported the return of migraine headaches and requested repeat injections (Id.). Thereafter, she continued to receive Botox injections routinely (Id. at 9, 12 & 16 & Exhibit 6F, page 1). In January 2020, she reported good responses to the same (Id. at 2) citing 85% improvement (Id. at 4), but reported ongoing headaches between injections, requiring the use of Frova "very frequently" (Id. at 2). At that time, a change in her treatment regimen was recommended along with lifestyle changes (Id.). In June, her headaches were noted to be fairly well controlled despite recurrences (Exhibit

14

> 20F, page 12). Specifically, she indicated that the use of Aimovig was effective, but not approved by her insurance (Id. at 13). Accordingly, in July, she was restarted on oral prophylactics (Id. at 7). In November, her neurologist was working with her to obtain approval of Aimovig, as her headaches were frequent and severe and she was not responding to the medications that she was being prescribed (Id. at 1).

R. 18–19; *see also* R. 20 (noting that Plaintiff's migraine headaches "were controlled by Botox injections and the use of medication, but her insurance was denying coverage of said medication"). Accordingly, this discussion at step four belies Plaintiff's assertion that it was "not clear" whether the ALJ considered Plaintiff's treatment history of migraine headaches with Dr. Mabanta when crafting the RFC.

Plaintiff also complains that it is not "clear" that the ALJ considered SSR l9-4p in considering Plaintiff's headaches. "This leaves subsequent reviewers unsure of how this condition was actually considered, and renders the RFC incomplete." *Plaintiff's Memorandum of Law*, ECF No. 12, p. 17. However, the ALJ was not required to expressly mention this ruling— or any other Social Security Ruling—in his decision. *See Holiday v. Barnhart*, 76 F. App'x 479, 482 (3d Cir. 2003) ("While it is true that the ALJ's written opinion does not cite to Social Security Ruling 99–2p, *we are not aware of any duty which requires ALJs to specifically mention relevant Social Security Rulings when rendering a decision on an individual's claim for Social Security benefits*. More importantly, the ALJ's analysis by and large comported with the approach set forth in Social Security Ruling 99–2p.") (emphasis added); *Martinez v. Colvin*, No. 3:14-CV-1090, 2015 WL 5781202, at *13 (M.D. Pa. Sept. 30, 2015) ("[N]o rule or regulation requires the ALJ to specifically mention relevant Social Security Rulings when rendering a decision."). In any event, SSR 19-4p, entitled "Evaluating Cases Involving Primary Headache Disorders," simply instructs, *inter alia*, that the ALJ "must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC" and to

"consider the extent to which the person's impairment-related symptoms are consistent with the evidence in the record." SSR 19-4p, 84 FR 44667-01 (explaining that "symptoms of a primary headache disorder, such as photophobia, may cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC"). As detailed above, the ALJ complied with this directive: He considered Plaintiff's treatment for her history of migraine headaches as well as the limitations flowing from that impairment when crafting the RFC with limitations of, *inter alia*, "moderate noise intensity level; cannot work around flashing or strobe lights"; "carry out simple but detailed instructions"; "perform simple, routine and repetitive tasks"; and "make simple workplace decisions[.]" R. 15–16, 18–20.

Finally, Plaintiff notes that the ALJ posed hypothetical questions to the vocational expert that included limitations regarding fluorescent lights and backlit computer screens—limitations that, according to the expert, would significantly erode the number of available jobs or preclude all jobs—but Plaintiff complains that such limitations were not included in the RFC despite the ALJ's finding that Plaintiff's migraine headaches are severe. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 17–18 (citing R. 65–67). However, as previously discussed, an ALJ's finding at step two does not require any particular language at step four. *Hess*, 931 F.3d at 209. Moreover, the fact that the ALJ also posed to the vocational expert alternative hypothetical questions that contained more limitations than did the RFC actually found by the ALJ is irrelevant when the RFC ultimately found by the ALJ is supported by substantial evidence. *Cf. Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218; *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered

substantial evidence."); *cf. Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J.

May 25, 2017) ("'[I]t would be error to include limitations not credibly established by the record

when relying on a vocational expert's testimony to make a disability determination.'") (quoting

*Chiucci v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016

WL 7322788 (D.N.J. Dec. 15, 2016)).

      In short, for all these reasons, the Court concludes that the ALJ's findings regarding

Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the

record.

###     **B.**    **Subjective Statements**

      Plaintiff also challenges the ALJ's consideration of her subjective complaints, contending

that medical evidence supports those complaints. *Plaintiff's Memorandum of Law*, ECF No. 12,

pp. 18–21. Plaintiff's arguments are not well taken.

      "Subjective allegations of pain or other symptoms cannot alone establish a disability."

*Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective

complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20

C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a

claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ

"must consider whether there is an underlying medically determinable physical or mental

impairment(s) that could reasonably be expected to produce an individual's symptoms, such as

pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably

be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the

intensity and persistence of those symptoms to determine the extent to which the symptoms limit

an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

Here, the ALJ followed this two-step evaluation process. The ALJ specifically considered Plaintiff's subjective complaints. R. 15–16, 20–21. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 16. As previously discussed, the ALJ detailed years of medical evidence and testimony to support his findings. R. 16–21. The ALJ also explained why Plaintiff's subjective assertions were not fully consistent or supported by this record, as follows:

> *Upon consideration of the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some symptoms. However, having considered the entire evidence of record and the criteria of SSR 16-3p and 20 CFR 404.1529, the undersigned finds that the claimant's statements that she is unable to work are not supported and are not consistent in light of the discrepancies between the claimant's assertions, testimony, and medical record.* The record shows that the treatment the claimant has received has been routine and conservative, consisting of outpatient mental health treatment, including therapy and medication management. This treatment has admittedly been helpful, as she quickly was stepped down from a partial hospitalization program and an intensive program and has been participating in outpatient treatment since the Fall of 2018. In terms of her physical impairments, she complains of neck, back and right wrist pain and migraine headaches resulting from a motor vehicle accident that occurred in 2014, several years prior to the alleged onset date. She had some treatment with an orthopedist for her complaints of pain prior to the alleged onset date, but limited treatment since then. She has reportedly been seeing an acupuncturist and/or chiropractor, but there are no actual treatment records from these providers. *Therefore, the evidence fails to substantiate the claimant's allegations of debilitating limitations. Accordingly, the undersigned finds that the claimant's testimony and allegations are not fully consistent with the evidence of record.*
>
> Based on a thorough review of all the evidence and subjective reports, the undersigned finds that the claimant retains the residual functional capacity to perform [a limited range of] light work[.] . . . . *This residual functional capacity assessment takes into account all of the claimant's legitimate conditions and resulting limitations imposed on the claimant and gives the claimant the greatest benefit of the doubt. The claimant has a lot of complaints, but there is little objective evidence to support those complaints.*

R. 20–21 (emphasis added). In the view of this Court, the record in this action provides substantial support for the ALJ's decision to discount Plaintiff's subjective statements as inconsistent with the record evidence. *See Van Horn*, 717 F.2d at 873; *Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

Plaintiff insists that there is also evidence that supports her subjective statements. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 20–21. However, the Court must "uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler,* 667 F.3d at 359 ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard].").

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and his findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn*, 717 F.2d at 873); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints will not serve as a basis for remand of this action. *Id*.

### C.    Step Five

Plaintiff also challenges the ALJ's step five determination on a number of bases. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 21–31; *Plaintiff's Reply Brief*, ECF No. 15. At step five, an ALJ must decide whether the claimant, considering the claimant's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the

national economy. 20 C.F.R. § 404.1520(g). Unlike at the first four steps of the sequential

evaluation, the Commissioner bears the burden of proof at step five. *Hess*, 931 F.3d at 201;

*Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford*, 399 F.3d at

551). "'Advisory testimony from a vocational expert is often sought by the ALJ for that purpose

[of determining whether other jobs exist in significant numbers in the national economy that the

claimant could perform] . . . and factors to be considered include medical impairments, age,

education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551).

"Testimony of vocational experts in disability determination proceedings typically includes, and

often centers upon, one or more hypothetical questions posed by the ALJ to the vocational

expert." *Podedworny*, 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical

claimant with the same physical and mental impairments as the claimant can perform certain jobs

that exist in the national economy." *Zirnsak,* 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at

218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's

credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational

expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632,

634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's

impairments, the ALJ must include all 'credibly established limitations' in the hypothetical.

*Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554).

 The Court addresses Plaintiff's challenges in turn.

### 1. Objections

 Plaintiff first complains that the ALJ failed to rule on Plaintiff's objections regarding

challenges to the vocational expert's testimony and the inconsistency of that testimony with the

Dictionary of Occupational Titles ("DOT"). *Plaintiff's Memorandum of Law*, ECF No. 12, pp.

24–26; *Plaintiff's Reply Brief*, ECF No. 15, pp. 1–4. The Commissioner responds that Plaintiff's objections were presented to the ALJ too late and that Plaintiff has therefore waived those objections. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, pp. 19–26. Plaintiff disagrees. *Plaintiff's Reply Brief*, ECF No. 15, pp. 1–4.

As previously noted, the vocational expert testified at the January 12, 2021, administrative hearing. R. 25–80. Plaintiff's counsel neither objected to the vocational expert's testimony at the hearing, nor did counsel ask that the ALJ keep the record open for post-hearing challenges to that testimony. *See id*. However, at the conclusion of the hearing, the ALJ advised that he would keep the record open for thirty days for the submission of additional medical records. R. 41–42, 79. In a post-hearing brief—addressed to the ALJ and dated February 16, 2021—Plaintiff objected to the vocational expert's testimony. R. 298–300. The ALJ accepted Plaintiff's post-hearing brief into evidence, R. 25 (listing exhibits, including, *inter alia*, Exhibit 18E, Plaintiff's brief dated February 16, 2021), but did not address Plaintiff's step five challenges in his written decision issued on March 24, 2021, R. 10–22. Plaintiff again raised these objections to the Appeals Council in a brief dated April 12, 2021, and, for the first time, attached supporting job data. R. 302–411. This brief was also accepted into evidence. R. 5 (reflecting that the Appeals Council "received additional evidence which it is making part of the record[,]" including, *inter alia*, Exhibit 20E, Plaintiff's brief dated April 12, 2021). However, the Appeals Council did not expressly address Plaintiff's objections to the vocational expert's testimony. R. 1–5.

In addressing the status of Plaintiff's objeections to the vocational expert's testimony, both parties point to unreported district court decisions and HALLEX. *See* HALLEX I-2-6-74(B), *Testimony of a Vocational Expert*, 1993 WL 751902 (addressing, *inter alia*, "Conduct of

the Hearing" and providing that "[t]he ALJ may address the objection(s) on the record during the

hearing, in narrative form as a separate exhibit, or in the body of his or her decision"); *Carolyn*

*C. v. Kijakazi*, No. 1:20-CV-3544, 2021 WL 4932785, at *15 (D.N.J. Oct. 22, 2021) ("[A] failure

to challenge a vocational expert's testimony at the hearing waives Plaintiff's right to later object

to that testimony."); *Tonti v. Saul*, No. CV 20-92, 2021 WL 518178, at *3 (W.D. Pa. Feb. 11,

2021) (holding that "'absent any specific evidence to the contrary, such as when a claimant

makes an on the record request at the hearing to hold the hearing open for post-hearing brief

detailing his objection to the VE's testimony and the ALJ clearly agrees to so hold the record

open, a claimant who fails to object at the hearing to the testimony of a VE waives the right to

subsequently object to that testimony and an ALJ has no obligation to address unsolicited post-

hearing objections to the VE testimony'" and finding that the plaintiff waived the right to object

to vocational expert testimony because she "neither objected to the VE's testimony at the hearing

nor obtained any agreement from the ALJ either prior to the hearing to hold the proceedings

open for post-hearing submissions") (quoting *Murnahan v. Comm'r of Soc. Sec.*, Civ. No. 19-

1348, 2020 WL 7024847, at * 6 (N.D. Ohio Nov. 30, 2020)); *Mattox v. Saul*, Civ. No. 19-1229,

2020 WL 6047173 (W.D. Pa. Oct. 13, 2020) (remanding for consideration of post-submission

briefs where the plaintiff "challenged the VE's testimony to some degree during the hearing" and

provided "a more comprehensive explanation of her position" in a post-hearing brief and the

"ALJ permitted and considered the filing of post-hearing briefs. That brief and those objections

became part of the administrative record. An ALJ is obligated to consider everything in the

record in formulating a decision" but the ALJ "did not meaningfully discuss this objection,

develop a record, or adequately explain his reasoning" when rejecting the challenge to the

vocational expert testimony); *O'Neill v. Comm'r of Soc. Sec.*, No. CV 18-0698, 2019 WL

23

413539, at *9 (D.N.J. Jan. 31, 2019) (declining to remand the matter where the plaintiff's

challenge to an alleged discrepancy between the vocational expert's testimony and the DOT

listings was unexplored during the hearing and later raised by the plaintiff in challenging the

ALJ's ruling). Plaintiff also points to, *inter alia*, SSR 96-9p, 1996 WL 374185, n.8 ("Whenever a

VE is used, the individual has the right to review and respond to the VE evidence prior to the

issuance of a decision. The VE's opinion is not binding on an adjudicator, but must be weighed

along with all other evidence.") and 20 C.F.R. § 404.970(b) ("The Appeals Council will only

consider additional evidence under paragraph (a)(5) of this section if you show good cause for

not informing us about or submitting the evidence as described in § 404.935[.]").

The Court assumes for present purposes only—without substantively deciding—that

Plaintiff did not waive the right to object to the vocational expert's testimony; the Court will

instead address the merits of her objections, which the parties have fully briefed. *Plaintiff's*

*Memorandum of Law*, ECF No. 12, pp. 21–31; *Defendant's Brief Pursuant to Local Civil Rule*

*9.1*, ECF No. 14, pp. 21–26; *Plaintiff's Reply Brief*, ECF No. 15

### 2.    Number of jobs

Plaintiff first challenges the number of jobs available to Plaintiff. As set forth above, the

ALJ relied on the vocational expert's testimony to find, at step five, that there exist in the

national economy a significant number of jobs that Plaintiff could perform despite her lessened

capacity—*i.e.*, approximately 18,860 jobs as a mail clerk; approximately 123,312 jobs as a

routing clerk; approximately 425,306 jobs as a cleaner, housekeeping. R. 21–22. Plaintiff insists

that the vocational expert provided unreliable job numbers and that "the real number is a small

fraction of" the 567,478 jobs identified by the ALJ. *Plaintiff's Memorandum of Law*, ECF No.

12, p. 26. Instead, Plaintiff argues, there are "only 12,966 mail clerks; 102,574 routing clerk; and 225,908 cleaners". *Id*. (citing R. 307–09).

The Court agrees with the Commissioner that, even accepting Plaintiff's asserted job numbers, there still exists a significant number of jobs (totaling 341,448 jobs) that Plaintiff could perform. *See Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) ("[T]here is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act.") (citing 20 C.F.R. § 404.1566); *Ahmad v. Comm'r of Soc. Sec.*, 531 F. App'x 275, 278 (3d Cir. 2013) ("In light of our determination in *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987), that 200 jobs in the regional economy was a 'clear indication' that other meaningful work in the national economy existed, we conclude that the ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor was evidence of other work in significant numbers in the national economy."); *Williams v. Comm'r of Soc. Sec.*, No. CV 20-12254, 2022 WL 279838, at *10 (D.N.J. Jan. 31, 2022) ("Notably, the Third Circuit has found that as few as 200 and 569 jobs nationwide to be 'significant,' which is far fewer than the jobs available for Williams's representative occupations.") (citing, *inter alia*, *Craigie*, 835 F.2d at 58; *Penrose v. Comm'r of Soc. Sec.*, No. 1:20-CV-00011, 2020 WL 7640585, at *7 (D.N.J. Dec. 23, 2020) ("At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy."). Accordingly, the Court is not persuaded that remand is warranted on this basis.

### 3.    Job descriptions and the RFC

Plaintiff next contends that "the data from O*Net [Occupational Information Network] . . . shows that these jobs [identified by the vocational expert and upon which the ALJ relied at step five] do not currently exist in a manner that is within the Decision's RFC." *Plaintiff's*

*Memorandum of Law*, ECF No. 12, p. 26; *see also id*. at 27–29 (relying on such data to assert that these jobs encompass mental, social, and/or physical requirements that fall outside the decisional RFC determination); *Plaintiff's Reply Brief*, ECF No. 15, pp. 5–6. The Commissioner contends that whether or not the jobs are inconsistent with the raw O*Net data offered by Plaintiff is not the proper inquiry; rather, it is consistency with the Dictionary of Occupational Titles ("DOT") that is required, and the ALJ properly addressed this issue at the hearing. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14, pp. 23–24.

The Commissioner's argument is well taken. "[N]othing requires ALJ's to resolve such conflicts [with O*Net] because the DOT—not O*Net—is the authoritative source in this area." *Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 496 n.4 (D.N.J. 2022) (citing *Everingham v. Comm'r of Soc. Sec.*, No. 17-12249, 2018 WL 6322620, at *9 (D.N.J. Dec. 18, 2018) (rejecting similar arguments regarding another third-party online resource)); *see also id*. at 497 ("'It is not for this Court to reform the methodology that SSA [vocational experts] use to determine available and appropriate jobs in the national economy that match a claimant's RFC.'") (quoting *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 16-05691, 2017 WL 4316880, at *9 (D.N.J. Sept. 28, 2017)); SSR 00-4p (advising that, before relying on vocational expert testimony, adjudicators must "[i]dentify and obtain a reasonable explanation for *any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT)*, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO)" and explain how any identified conflict was resolved) (emphasis added); *Evans v. Comm'r of Soc. Sec.*, No. 4:21-CV-00841, 2022 WL 4357470, at *10 (M.D. Pa. Sept. 20, 2022) ("Here, it seems Plaintiff is conflating the DOT with O*NET and the Occupational Requirements Survey. In other words, Plaintiff is confusing the requirement that

the ALJ ask the vocational expert to reasonably explain the ways the VE's testimony conflicts with the DOT with a requirement that the ALJ ask the vocational expert to explain all conflicts in the VE's testimony, which is not a requirement in the Third Circuit.") (citations omitted); *Junod v. Berryhill*, No. CV 17-1498, 2018 WL 5792214, at *3–5 (W.D. Pa. Nov. 5, 2018) ("'Thus, even if the VE's testimony was in conflict with O*NET, . . . there is no requirement that the VE's testimony comply with that database.'") (quoting *Malfer v. Colvin*, Civ. No. 12-169J, 2013 WL 5375775, at *5(W.D. Pa. Sept. 24, 2013)); *but see Allen v. Comm'r of Soc. Sec.*, 475 F. Supp. 3d 413, 415–22 (M.D. Pa. 2020) (remanding for further consideration where the plaintiff challenged vocational expert testimony and the plaintiff "asks only that the ALJ be tasked with addressing his concerns about the reliability of the DOT job descriptions. Additionally, Allen presented the O*Net job descriptions, with his reliability concerns, to the ALJ prior to the ALJ's decision in accord with his right pursuant to SSR 96-9P n.8"). Here, the vocational expert stated that his testimony was consistent with the DOT and, to the extent that he discussed absenteeism and time off task, he stated that his testimony was "all based on my professional opinion working in the rehabilitation field for about 23 years." R. 73. Accordingly, the Court is not persuaded that this issue requires remand. *See id.*; *see also Zirnsak*, 777 F.3d at 617 ("As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT."); *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189–90 (3d Cir. 2007) (finding the ALJ did not err in relying on a vocational expert who based his opinion on thirty years of his experience).

### 4.  Social interaction

Finally, Plaintiff argues that all the jobs identified by the vocational expert fall outside the RFC because Plaintiff is unable to interact with supervisors and co-workers on a level

necessary to maintain competitive employment. *Plaintiff's Memorandum of Law*, ECF No. 12, pp. 29–31; *Plaintiff's Reply Brief*, ECF No. 15, pp. 6–8. Plaintiff notes that the ALJ limited Plaintiff "to only 'occasional' contact with, co-workers and the general public and only 'frequent' contact with supervisors (among other restrictions)" and argues that this limitation "dictates that [Plaintiff] is unable to have any contact at all with these individuals for 1/3 and 2/3 of each work day respectively." *Plaintiff's Memorandum of Law*, ECF No. 12, p. 30. Plaintiff also notes that the vocational expert testified that 10% time off task, and even 5% time off task during a 90-day probationary period, would be job preclusive, citing "the need for interaction with supervisors and co-workers as the reason behind the heighted standard during the probationary period." *Id*. at 30–31 (citing R. 71–73). Thus, Plaintiff contends, an inability to respond to a supervisor or co-worker on a sustained basis is job preclusive. *Id.* (quoting SSR 85-15 that, *inter alia*, "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers").

Plaintiff's arguments are not well taken. As a preliminary matter, a fair reading of the hearing transcript reflects that the ALJ never equated "frequent interaction" with supervisors or "occasional interaction" with co-workers with an inability to interact with a supervisor or co-worker or to otherwise undermine an ability to work on a sustained basis:

> Q Okay. Let's now talk about the off task time, as a percent of an eight-hour day in addition to breaks allowed by an employer and let's work with the idea that those breaks will be 15 minutes morning, 15 minutes afternoon, 30 minutes for lunch. In your opinion what is the tolerance for off task time in the U.S. economy?
>
> A No more than 10% off task.
>
> Q All right. So once again if I've got somebody, the root cause of this phenomena is, is beyond their control, it's just something that happens to them time after time after time that they're above 10%. They've exhausted the employer breaks, they've

exhausted the 10% and they are off task above that threshold, chances are that person is not going to be able to sustain competitive employment, is that a fair understanding?

A That is a fair understanding, yes.

Q All right. Now let's talk about probationary periods for a moment, typically how long is a probationary period for unskilled job, like an SVP 2 job?

A Ninety days.

Q All right. Now during this 90 day probationary period is there, does the employer have a more strict expectation of what unscheduled absenteeism and what off task time will be allowed?

A Yes.

Q Well how does the expectation become more strict, how does it change?

A It's either where an employer would allow for two, again they go back to the one and then at times throughout those 90 days they would count out how many absences actually occurred. So within that if there were three absences within those 90 days I'll be fairly certain that every employer would be okay with that. But if it goes beyond the three again by looking at that more than one absenteeism happening, but as far as tardiness and things like that that is a different way of looking at it and that time off task, and so that could lead to that person not fulfilling their probation if they had any sort of tardiness.

Q Okay. Now let's talk -- so what about the off task time, how does that change? You talked about absenteeism, during the probationary period how does the off task time expectation change?

A That off task time changes to probably about no more than 8% because there's a lot of training going on, whether the supervisor or with a mentor, and if they are noted to be taking breaks or being off task or not paying attention those employers will figure that out a lot faster than what they were doing if they wouldn't be in training. So I would jump in my opinion that, that's my professional opinion, they would jump down to 8%.

Q Okay.

A Not even 8%.

R. 71–73.

Moreover, "'courts routinely find that an individual can perform unskilled work in the national economy, despite a limitation to only occasional interaction with coworkers, supervisors, and the public.'" *Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 273 (D.N.J. 2022) (quoting *Torres v. Comm'r of Soc. Sec.*, No. CV 14-6178, 2015 WL 8328346, at *7 (D.N.J. Dec. 8, 2015) (collecting cases)); *see also Vargas v. Saul*, No. 1:19-CV-1858, 2020 WL 2468401, at *7–8 (M.D. Pa. May 13, 2020) (noting that "courts have frequently sustained decisions like the ALJ's determination in this case, which found that a claimant could perform SVP level 2 jobs when the ALJ limited that claimant to occasional interactions with coworkers or supervisors") (collecting cases); *RE: Kathline O. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-18-3496, 2019 WL 4168961, at *5 (D. Md. Sept. 3, 2019) ("Plaintiff's argument that 'Occasional interaction with others cannot be done on a sustained basis' is logically flawed. . . . The DOT and other relevant sources clearly contemplate that some jobs require some tasks to be performed on a less-than-continuous basis, and there is no error in finding a claimant capable of an activity on an 'occasional' or 'frequent,' rather than 'constant,' basis. The overall job must be performed eight hours per day, five days per week, but each individual task need not."); *cf. Torres v. Comm'r of Soc. Sec.*, No. 15-CV-1382, 2016 WL 3911980, at *11–12 (S.D.N.Y. July 15, 2016) (noting that SSR 85-15 requires, *inter alia*, the ability (on a sustained basis) to respond appropriately to supervision and co-workers and that "[n]one of the nonexertional limits identified by the ALJ[,]" including, *inter alia*,—"no interactions with the public; occasional work-related interaction with co-workers and supervisors"—"narrows plaintiff's possible range of unskilled work so as to deprive him of meaningful employment opportunities"). Accordingly, Plaintiff has not persuaded this Court that remand is required on this basis.

## V.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 29, 2024                    _____*s/Norah McCann King*_____
                                            NORAH McCANN KING
                                            UNITED STATES MAGISTRATE JUDGE